Wacko's Too, Inc. v. City of Jacksonville Good morning, may it please the court. We're going to wait just a moment until the court settles down. I want to make sure that we have all of the attention on you. All right, now we'll hear from WACOs 2. Very good. Good morning, may it please the court. My name is Gary Ettinger. I represent the appellants in this case who have brought a variety of challenges to Jacksonville's adult entertainment ordinance. So we brought a number of issues. Two of them have to do with the allegories of the city's licensing code. One is a preemption argument. We're comfortable with our briefing on those issues. Those are important issues, but what I'd really like to explore today is the ban on exotic dancers under the age of 21. It's a novel issue. It's a case of first impression before this court. Can I ask you a question at the outset? When the Supreme Court has said things like, you know, nude dancing is protected by the First Amendment, but only barely so, or something like that, what does that mean? Like what effect on the doctrine? Does that sort of residual doubt pervade everything else that happens in an analysis? Or, as I was saying to my law clerks yesterday, is it sort of like the book of James barely made it into the Bible, but once it's in the Bible, it's in the Bible. It's like once you pass underneath the, you know, sort of the wire, you get the same treatment. Judge Newsom, I really appreciate the questions you ask, because they always go to the fundamentals of the First Amendment, and so that is a brilliant question for this kind of case. The answer is that, with one caveat, which I'm going to explore, the First Amendment is the First Amendment, and so we see some dicta in the fly fish case, for instance, that tells us that this language about being the outer ambit or perimeter, the Supreme Court has never said that the First Amendment doesn't apply with full vigor to adult entertainment, which is, after all, expressive speech, and we see that, you know, in the Barnes case, in Alameda, every case, you know, for decades has told us this is a protected speech category. The caveat has to do with doctrine of secondary effects, which is, if you will, an exception to the way we usually approach content neutrality issues, and so for that initial inquiry, the Supreme Court has basically told government they get a little bit of a pass, or it's a little softer sell for government, and the inquiry as to whether the government is motivated by addressing secondary effects versus quashing expression is seen as very deferential. I don't think, and I guess this is a softball to you, I don't think I quite understand that, because, so the Supreme Court, you know, in a case called Reed versus Gilbert was very clear, said, look, benign motivation is all fine and good, but if on the face of the statute this thing is content discriminatory, then that's the end of it. Reaching to the choir, Judge, so this has actually been explored a little bit. There has been some dictum in the Eleventh Circuit that suggests that because Reed did not directly overturn secondary effects doctrine, that even though it seems to be heartily in conflict with that kind of theory, that we're still going to obey that. In Reagan National, when it was before the Fifth Circuit, there was actually a footnote in there where the Fifth Circuit said, we read Reed on its face, it says what it says, and we are abrogating all our case law based on secondary effects. So that went up to the Supreme Court, that decision was granted and vacated, and there's not been further discussion as to what's going to happen to that footnote. But nothing in the Reagan National case, I get it that Reagan National walked back Reed in another way, but nothing in Reagan National walks back that part of Reed, does it? It does not. So I agree with you, Judge, that secondary effects is a very difficult doctrine to maintain in light of Reed, and that's something that someday I'll certainly explore with this court, but it's really not the core of what we're doing today. I have to take the case law as we find it, and at the moment the case law from the Supreme Court, and seems to be the law in this court, says we have to address the secondary effects. It's very clear in our briefing, however, that secondary effects only has to do with the initial inquiry as to whether these laws are on their face, content-based or content-neutral. We've argued for strict scrutiny and content-based regulation in this law because it effectuates a ban for people who are 18, 19, and 20. There are no alternative avenues, they can't go anywhere else to express the message of eroticism, which Barnes tells us is something unique about adult dancing, and so the Supreme Court also tells us, again in every single adult entertainment case, and there are a number of them by this point, that the initial inquiry is is it a ban or significant suppression of speech? If it is, we do not engage in intermediate scrutiny. We only deal with intermediate scrutiny when we're dealing with time, place, and manner restrictions, which are the most ordinary ordinances and laws that come before this court. So I'd like to explore a little bit about what makes this law unique and why it clearly is not a time, place, and manner restriction. Can you start with standing? Because even everything you just said now has been about the 18 to 20 year olds, but how does the ban on that demographic impact your client's ability to continue with exotic dancing or adult entertainment? Yes, Judge, a good question. Again, a fundamental question and one that's been repeatedly answered. So the Supreme Court tells us, we cite to Virginia Pharmacy as a particularly good case, the Supreme Court tells us that the First Amendment applies, if you will, to the entire chain of distribution of speech. So it applies to the speaker, it applies to a producer and promoter, and it applies to everyone that's involved. So if we're dealing with a newspaper, the speaker there is typically, you know, the reporter, but the producer of speech, and they assert all those same kind of rights. Here, the adult entertainment establishments, they're known for producing entertainment. That's how they're known to the community, but it's clear they're not the speaker. They never are in these cases. Instead, they hire entertainers. So in this case, they're not actors, they're performers. But the clubs themselves have a right to choose who they want to contract with, who they want to bring in as entertainment. So we could not have the city of Jacksonville telling a club, you know, you can produce and promote a show by the Beatles, but not the Rolling Stones, because, you know, the Stones are a little bit edgier. Those promotion decisions are left to citizens. In this case, the decision is, are these clubs permitted to contract with dancers who may be under the age of 21? So there are a lot of reasons why they may want to. I can give you some examples. One may be... Your client would want to have 18 to 20 year olds dancing? Certainly, certainly. So this is not... I should begin by saying this is not a burden on the clubs to me. They get to speak because they want to speak. But you can imagine reasons why they may want to specifically contract with younger performers. One might be because it makes the dance, the pool of potential employees larger, so it accentuates speech because there's more variety. Another may be that a particular dancer, so there were some, you know, 100 dancers that were affected by this law that lost their jobs. Some of them may have been the premier dancer in a club and a real loss would have had a particular clientele that would come in just to see that performer. Another reason might be what's called feature entertainers. So in this business, for instance, you could have an adult film store like Stormy Daniels. She earns her living by going to clubs and, you know, performance and signing autographs. Did you... was there any evidence... I mean, from my understanding of the record, there were over 500 pages of information that the district court reviewed in terms of the prevalence, I guess, of human trafficking within the population. Did you all present any evidence to rebut any of that? Absolutely. In a couple different ways. We criticized those studies, and in a couple different ways, most of that information was not actually before the City Council. It was just accumulated by the sponsor of the bill. None of that information looks like the ordinary evidence we would see in a court. They are, you know, anecdotal studies, newspaper articles, and that sort of thing. We also point out that the statistics and the findings that we see from this stack of documents don't bear out the city's interests. So, for example, we see that the most common way that women are introduced to trafficking is through internet contacts. That's something like over 87% of women who are trafficked are initially lured in through the internet. The affiliation with clubs, according to the city's evidence, 0.6%. We also see, for instance, that the average age where people get in... are trafficked is 17, and as the trial judge said, looking at the record, the vulnerable period seems to be between 14 and 17. The city's own findings say that the average age women are trafficked are 17, minors, not sui geris adults. We also have the judicially noticed fact, which is there's never been an instance of human trafficking in the city of Jacksonville. I also need to note that... Well, not never, just not uncovered or that human trafficking indeed is an issue. It could be an issue. The evidence that we have, the evidence before the court, is it has not up to this point been an issue in these clubs. We also need to stress that human trafficking is a problem, right? And we have no doubt that the city has a vital interest in addressing this problem, but it has to do so through constitutional means. And so, let's assume that there's some evidence of trafficking or a reason why the city wants to do it. It still has to meet, if we're not dealing with strict scrutiny as we maintain is appropriate, we still have to deal with the prongs of intermediate scrutiny. Can I ask you just a quick question before we get into the application of the scrutiny? This is, I think, part of my confusion about secondary effects. Secondary effects to me, if the idea is the government has a interest in rooting out, preventing human trafficking, if that is the secondary effect, it seems like we're sort of double-dipping on the government's interest, like somehow on the front end that interest changes the level of scrutiny, and then on the back end you just redeploy it as the government's interest to meet sort of the first prong of the scrutiny. That's why I don't really understand how secondary effect works. It seems like it would be sensible to me to say the secondary effect that the government trying to root out human trafficking is a really strong interest, granted. That's why it meets the first prong of some heightened scrutiny standard. But I don't really think I understand why it should change the nature of the scrutiny on the front end. That is a doctrinal weakness in secondary effects and then how it plays in intermediate scrutiny. So on the front end, if this is a compelling government interest and the city didn't try to defend on that basis, but let's say it is, then we still have to deal with narrow tailoring, which as we know is an extremely vigorous challenge on the strict scrutiny side. There is a certain double-dipping when we were doing secondary effects, because the first question is, you know, does the government has an interest? Does it have an authority and doesn't have an interest in regulating in this field? So to some question that seems to be, at some points that seems to be exactly the same question. In practice, when I'm litigating these intermediate scrutiny issues, most adult entertainment laws fit neatly into intermediate scrutiny. This one does not. But when I'm dealing with intermediate scrutiny, the government interest is just a given in every case. And we have not, you know, we've never contested in this case, for instance, that the government has a really strong interest in deterring trafficking. The odd thing about this, of course, is it doesn't do anything directly for trafficking. It doesn't go after the criminal, doesn't enhance penalties, it doesn't, you know, bring additional social resources to bear. It punishes only the speaker, which seems just a really odd fit. And which brings us to narrow tailoring. I have extremely limited time. We are very comfortable with our briefing with narrow tailoring. There are a couple issues I want to address particularly. The Club Madonna case, we do want to highlight as the proper way to react to, in that case, an actual instance of trafficking. You do a time, place and manner restriction, which is what Club Madonna ended up doing. With a little bit of time I reserved on rebuttal, I also want to address the new Florida statute, which also is a time, place and manner restriction and not a ban. Thank you. All right. Thank you, counsel. Now we'll hear from the city of Jacksonville. Good morning. May it please the court. My name is Craig Feeser. I'm here on behalf of the city of Jacksonville. I want to start out by talking about the standing issue. We don't believe that there is standing in this case for the club owners to bring a First Amendment challenge. The recent DC operating case that came out just a little less than a month ago, we think was correctly decided by the Fifth Circuit and decided that whatever First Amendment rights club owners might have, they're not tied to age and they're not tied to an ability to hire at a certain age. I mean, wouldn't they? I guess a couple of questions. One, isn't this case a little different in the sense that here the complaint actually alleges an injury on behalf of the club owners? The only allegations in the complaint are that the club owners wish to contract with dancers ages 18 to 20 and that there were maybe as many as 100 dancers that met that qualification at the time of the complaint. Why isn't that enough? Why isn't that enough? That's not enough for a First Amendment injury. They can still present this exact expression, whatever expression we're talking about here, they can still present it. They still do. They operate every single day. They have plenty of people that they can hire. The DC operating case talks about all of this. With a smaller pool of people, with a different demographic of people, I don't want to get too gruesome here, but I mean, there might be real reasons that they have a different demographic. The expression here, and as your Honor correctly pointed out, is that the outer ambit of speech, whatever that means, whatever expression is involved with erotic dancing as is defined in the city's code, isn't tied to age. I mean, any dancer of any age, 21 and up, can present the same exact speech. Owners can present the same exact performances at their clubs. They're not, the cases that the appellant cite, sort of trying to establish standing here, are cases where consumers, for example, are banned from even receiving any speech at all. It's just shut off. Or where concert promoters or other promoters of speech are simply just not allowed to present that speech at all. What about their argument that, I mean, tied to sort of the demographic, I guess, but there might be a superstar dancer or something that brings in a recognize the establishment because that dancer can no longer perform there. Your Honor, the best argument that they have that they're standing here is that there is some sort of First Amendment interest in providing performances by dancers of this particular small age group. Would you likewise say that there was no standing if there was a prohibition here on them hiring anyone younger than 70? Because they can still have erotic dancers who are north of 70. They could, Your Honor. And potentially, if that was the argument, that would be almost like banning their ability to even have a market at all to present this kind of speech. I mean, from a logistical standpoint. But if you're saying there is a First Amendment, an actionable First Amendment injury there, I don't really know where it is that the Constitution of the United States ceases to matter as you tick downward in the age demographic. The way the D.C. operating case put it was that these dancers can still dance. They can still dance in other places, not in sexually oriented businesses, which is what they're called in Texas. And the owners can still present this exact same kind of speech. There's a market. There's no evidence. But we're not. I mean, I don't I don't think that the dancers themselves have standing in this case because, well, I think maybe they did, but it was moot. It's become moot. But that's not the issue. The question is whether WACOs has standing to present this argument. Right, about the 18 to 21 year olds and and that being the question, why isn't Judge Newsom right here? The issue is that the club owners don't have any kind of a First Amendment injury when they can present this exact same kind of expression. That doesn't answer that doesn't answer the question, though. I mean, that doesn't answer the question that Judge Newsom has asked you, which is, you know, why is there an injury if it's 70 and up? Right. And not an injury if it's 21 and up. If they could effectively show that the city's regulation institutes a ban on their ability to present these performances at all, and maybe in that case they could or they could make that allegation. What if there were plenty of 70 year olds who wanted to dance? The pool is there. But I mean, you're not going to deny that there is a difference demographically between 70 year old dancers and younger dancers. And so what I'm asking you is why it is that the Constitution of the United States would draw some line south of 70. I mean, you've basically conceded, I think correctly, that even if it weren't sort of an out and out ban at 70, the club owners have an interest, a First Amendment interest in portraying exotic dancing by those younger than 70. And so why don't they have an interest in portraying exotic dancing by those younger than 21? I suppose, Your Honor, if they could allege some sort of standing based on some sort of damage to their ability to present any performances at all or this kind of speech, then they would have standing. I think the D.C. operating case, the Fifth Circuit got it right in saying that their actual First Amendment. What is your. Can you point to any cases or anything that say they have to show that they can't present any dancing at all in order for them to have established an injury in fact here? I don't I don't have any cases at all. In fact, Your Honor, that the Fifth Circuit case that came out a little over a month ago is the first time I've ever seen a court in this context address this kind of standing. And that's why I filed it as a subpoena authority, because it is there's a new case. It's a first impression type of case for standing on the merits. Can you deny that on the face of it, this is content based? We absolutely deny that it's content based. Why is that? It pertains only to exotic dancing, right? Correct. You're not jazz or ballet or the retro. Those all kinds of other forms of dancing and performances are actually explicitly accepted from both sections of the dancing and adult entertainment code in the city's ordinance code. So it does not apply to all kinds of other dances. So on its face, we can get to sort of motive and purpose and secondary effects. But on its face, explain to me why it's not content based. What the district court said correctly and what every court that's ever addressed this kind of an issue, regulations on adult entertainment, including age restrictions. There are several cases more recently, more recent years that have addressed age restrictions have said it's not has nothing to do with banning speech. Speech can still be performers can still perform. It has to do with some other reason why a city is doing this type of thing. And here it's human and sex trafficking reasons. But that just gets to reasons. I guess I'm asking you, I promise we'll talk about reasons because I'm genuinely confused. You can see about how secondary effect works, but just on the face of the statute, why? And I'm thinking about Reed here. I'll confess because, you know, so Justice Thomas and Reed says your benign motives are not going to help you in the face of your statute is content discriminatory. On the face of the city's ordinance code, chapters 115, 151, what they did, what the city did in 2020 originally was look at ways, not just an age restriction, but all kinds of different ways where they might be able to combat human trafficking. There's and they had evidence across the board that this was an issue and that's an issue in adult entertainment strip clubs, that it is an issue. It's almost disingenuous to suggest that it's not. There's all kinds of studies that say this does go on. So got it. Got the motive understood. So so they looked at how what are different ways that we can combat this in these types of establishments. And incidentally, they looked at hotels and motels as well. And just one of the ways that they did that was by saying we should increase the age of these particular employee employees at strip clubs to 21. There's there's evidence in the record that they looked at the fact that 18 to 20 year olds are still kind of more like they're young adults, but they're kind of act more like teens. Still, there's psychological studies that they do. There's there's evidence in the record, including case law, the Dover versus Landry case in 2018 from the Fifth Circuit. Now, there's even more recent cases, including a district court case in Texas that just came out where we actually had a full trial on this, that 18 to 20 year olds actually are particularly vulnerable to sex trafficking in strip clubs, just like younger, younger minors are who cannot dance. So I think I get all of that. But still, the statute that they wrote says no dancing for 18, 19 and 20 year old exotic dancers. I just I don't think I understand why on its face that's not. Content with what they did in the ordinance code, Your Honor, was they said we want to have dancing. This is one way that they were trying to guard against human trafficking and sex trafficking, which we want to have all dancers. I'm sorry to interrupt, but what about that makes it not content based? In other words, the fact that it's talking about exotic dancing and specifically 18 to 20 year olds engaging in it, I think Judge Newsome and he'll correct me if I've misstated it, but it because it's not aimed at speech. It's not aimed at the expression. It's aimed at an overall purpose to prevent humans and sexual trafficking. As I was saying, they're trying to they instituted a requirement for a worker identification card. The problem that I'm trying to get you to focus on is that Reed says and we can debate whether Reed sort of undoes previous case law, but Reed says basically the court says we don't care what you are seeking to do, what you are aiming to do, what you are trying to do, what you did is enacted a content based restriction. And that by the by virtue of the plain language of the First Amendment, which which prohibits abridgements of speech, pure motives be damned. If you abridge speech, it's content. All the all the all the city did here was say you have to be 21 years old to have a worker identification card to engage in exotic work in a strip club. And to know and whatever. That's my question. Just to be clear to dance or to work in the strip club because there are other positions that could be occupied. Yes. Yes, your honor. And the way Texas did it was they just banned everybody from working in any of these types of strip clubs. The city of Jacksonville decided that dancers in particular are most susceptible to being trafficked, not because they were trying to ban their speech or ban them from dancing. We do disagree that there are not other places where they could engage in erotic dancing or other forms of dancing and express their First Amendment rights to expression. Dancing entertainment establishments in the city's code are very specifically defined. You have to meet the requirements and without getting graphic about it, you have to meet certain requirements to be even considered a performer or to be even considered a adult dancing entertainment establishment. If they're outside of those, they're not regulated at all. And they can still engage in this kind of. But Judge Abudu is exactly right. It only targeted the dancers. Right, which which as as the as the district court in Texas said correctly, those are the people that are being targeted by traffickers, by sex traffickers, so it's appropriate to let your own like legislative findings here say says the dancers or other employees. Right, and again, the law doesn't require the city to address an entire problem or entire issue by banning everybody over 20 under 21 from working in a strip club like Texas did. They can. They are legally allowed to go after who is most vulnerable to trafficking in this particular case. And that would have been, I think, stronger. But here and this is the weakness is that the city identified this demographic, but only with respect to one category of employment, which as has been acknowledged, is a form of of expression. Correct, Your Honor, and but I think I think what the city was doing here is not trying to ban the expression itself, but trying to go after the specific employee. That's the one that's trafficked as the Texas, Texas District Court found and the Fifth Circuit found other employees at strip clubs, whether they're waiters or janitors or whoever they are, maybe are subject to being trafficked, but not not to the level that potentially dancers who are taking and the ways to find it in the city code. To be clear, these are people that are giving performance and taking tips from customers at a commercial establishment, whatever limited expressive right they have to dance. They can still do the Texas court said dancers can still dance. They just can't be employed by these particular commercial establishments and take tips from customers at those establishments. Can I can I ask you one more sort of content based content neutral question? So I read the Supreme Court's cases here and I think it's maybe eerie where the Supreme Court says it says the ordinance here does not target nudity that contains an erotic message. Rather, it bars or bans all public nudity and it seemed to sort of say like seem to suggest anyway, if this were something that targeted the erotic message, it would be different. Your Honor, and there's a good reason why every court that has addressed this type of regulation, including age or regulation on clubs at all, has has applied intermediate scrutiny. It's because these types of regulations are permitted and they don't target the speech itself. They target what occurs at these types of clubs. And that is a permissible, constitutional, non-content based reason for a city to have an ordinance the way what just like the city of Jacksonville has in this case. And therefore, it triggers intermediate scrutiny. And then you go into the entire O'Brien analysis under intermediate scrutiny. Here this the city had and one of the main focuses that the appellants have in their briefs is the narrow tailoring idea. The city had evidence across the board of every kind of evidence you could possibly have that this type of age restriction would help to curb human and sex trafficking. They had studies from other cities. They had studies from here. They had their own workshop where law enforcement, including our sheriff's office, Homeland Security, FBI, all talked about this kind of thing occurring in strip clubs. They had court cases, including the Doe case, which came out in 2018. They had evidence from every possible connection to trafficking occurring in strip clubs. And that's why they were doing it. Dancing still happens in the city of Jacksonville. All these appellants are still open. They're still operating. They're still presenting this exact same kind of speech every single day. There's just now an age restriction on who can work there and present these kinds of performances. Do you mind if I ask a question? No. Go right ahead. About the prior restraint issue. Because there are a couple of things that I'm just genuinely confused about. So with respect to the status quo, I've read this FWPBS case, which I think might be internally sort of inconsistent. And I'm going to ask for both of your help in helping me to understand it. So it seems to say once that the status quo has to be maintained prior to judicial review. If that's true, then it seems like this ordinance has a problem. At another point, it says that the status quo has to be maintained during the time while the licensor is making his or her decision. If that's true, this ordinance may be okay. Because as I understand it, the young women can dance while the sheriff is considering the application, but not after he denies it and while they're waiting to get to court. So which of those two readings of FWPBS, and I suspect you may have yours and he may have his, but help me with the just internal inconsistency of the opinion. The way that the district court read it, and we think the district court was correct, was the second version of the way you're reading FWPBS and Friedman. You can't have an unreasonable delay in a decision being made at all. You can't have this sort of hanging out there and a dancer doesn't know what she can do and what she can't do. Here you have 14 days, the dancer can dance during that 14 days. If nothing happens, if the sheriff doesn't do anything, it's approved and they can just get their license and keep dancing. If it's denied, and I will say, there's really only two reasons why it would be denied. One is the dancer didn't fill out the whole application or left something out or didn't have identification or something, or has a criminal history that would prevent them from being able to dance in a strip club. Every other reason, there really isn't any other reason, and if it's denied for one of those reasons, the city has an interest in not allowing those types of dancers to dance in the interim. They have a prompt judicial remedy, which is what FWPBS talks about. The city decided that the fastest way would be to allow them to file for an emergency injunction and get a decision very quickly from a judge, and that during that time period, which would presumably be a very brief time period, the city doesn't have to allow them to dance, and that's how the district court interpreted it. So I'll ask him the licensor question, but how do you explain the judicial review language in FWPBS? The district court talked about that and cited some other cases as well and just simply said that's not how it's been applied. It's been applied as the initial licensor, not being able to just sit on it or have an engage in this kind of speech. That doesn't happen here. They have a limited period of time, and it's a very short, quick time for a judge to decide if a denial was correct or not, and that's constitutional. But as a practical matter, I may have just misunderstood the way it works, but the statute or the ordinance itself says it's not going to be enforced as to 18 to 20-year-olds until until a court has an opportunity to declare that it is not unconstitutional or something to that effect, right? Yes. The district court actually found that that language was vague, so the city ultimately struck that language and just simply instituted the ban on anyone under 21 from dancing in strip clubs in the interim. Obviously that takes a little bit of a risk, but the district court said that having that sort of trigger language in there was vague and therefore unconstitutional. All right. So you're not defending it on that basis then? No, Your Honor. All right. So I've got one more. So sorry. The 14-day period for the sheriff, is it your contention that 14 days is just like per se okay? It's de minimis. Forget about it. Or that 14 days here is reasonable? Both. Both really, Your Honor. Yeah. I mean, but I guess, well, so tease that out for me. Why would 14 days per se be okay? There are cases all over the board, admittedly, on what's too much delay and what's permissible. The district court cited cases where you had 30 days. The appellants have cited a case where five days was too long. So there's really no real good bright line there. We have a very, very large, huge Jacksonville Sheriff's Office in a consolidated city that's processed literally hundreds of these particular applications, and I will say processes them very, very quickly and issues licenses very quickly. The 14 days was in the city's decision, the amount of time it would, to give them enough time to make that sort of decision, it's a definite time period. The issue is, the Supreme Court has said you can't have an indefinite delay or an undue delay and we don't think 14 days is either. So that goes to my question about sort of like, maybe your position is that 14 days here, given the circumstances that Jacksonville sort of faces, is reasonable. My question with respect to that is, what's your burden of justification to show that 14 days is reasonable? Because, you know, I mean, the appellant says, this is an ID check and a criminal background check, that can be done lickety-split, what are we doing with 14 days? And I mean, this is a prior restraint. Everybody seems to recognize this is a prior restraint, and that's like, I think, the historians will tell you, like, what the First Amendment is about. And so, it seems like you probably have some burden to justify 14 days. And how high is that burden, and like, how do you discharge it? Again, I don't think there's really a good bright line as far as what number of days is too much and what's enough. I will say, though, again, to point out, dancers can still dance this whole entire time. The status quo is, they've always been able to dance, they're now applying for an ID card because the city, you know, put in all these requirements for an ID card, and during that time period, which is short, they can still engage in their First Amendment activity. Therefore, it's not unconstitutional. All right. Thank you, Mr. Fieser. We'll hear again from Mr. Ettinger. Thank you. Let me jump right on Judge Newsom's questions. So Lerner Counsel got the prior restraint analysis wrong at every level, every level. Let's start with the context. So we're not talking about new applicants for dancers. For dance work authorization permits, the status quo is, they don't get to dance, right? They do get a temporary certificate. Once that temporary certificate is, you know, denied, then they have to go through the appellate process. The status quo there had been no dance. We're dealing with all the current performers at all the appellants' establishments. So these are performers that currently have a work authorization card. It has to be renewed annually. So we're talking about a circumstance where they're dancing currently, and the sheriff makes a determination that they're not entitled to renewal. What happens when that determination is made? So the sheriff is a bureaucrat. He's not a judicial officer. He's made the decision that a particular dancer cannot perform. The contrary to the circumstance where a dancer can perform temporarily pending review, in this circumstance, the code tells us that that dancer is not entitled to a conditional work permit. She has to stop dancing immediately. So there's going to be a gap period here. The city does provide for prompt judicial review. You can get an injunction. But between the time that the sheriff has said that this application is denied when the dancer cannot perform, and the time that a judge rules, there's a gap of restraint. So then we turn to what does WPBS tell us? That is the operable law. The exact language is, any restraint prior to judicial review can be imposed only for a brief period of time during which the status quo must be maintained. That appears at 227 of the opinion. Now in fairness, am I right though? I think at 228, it uses the status quo language in connection with the licensor's decision. Correct. But that is not the precise circumstance we're dealing with. We're dealing with the circumstance that exactly meets this requirement. So we have a restraint placed by someone who's not a judicial officer, the sheriff. Before a judicial officer can then rule and decide whether the restraint is appropriate or not, we have this gap where no speech occurs. And that gap has changed the status quo. Your point on this is that the better reading of FWPBS is there's something magic about a judge weighing in on the permissibility of this as against a sheriff? Precisely correct. The Supreme Court has told us in Freedman, which was the predecessor to FWPBS, that as a matter of policy, we just don't trust administrative officials to make these decisions. The idea is that judges are trained in this area. Also it's an adversarial process where evidence is taken. Presumably there'd be no appeal, no injunction, unless the sheriff made a mistake or the dancer thought a mistake was made, and there has to be an ability to suss out those facts. Only judges get to make that. Freedman tells us that, carried on by FWPBS. I'd like to ask you a question about, change subjects a little bit, and get back to content-based. It does seem to me that the rule is content-based, but you know, City of Austin came out after Freedman is telling us that it's limiting Reed to a narrower rule, which, you know, we're going to treat it as content-based only if it singles out specific subject matter for differential treatment, and applies to particular speech because of the topic discussed or the idea or message expressed. In other words, it seems to be sort of reintroducing the purpose thing that Reed seemed to take out, and I wonder if you could address that. A couple things. I have to reiterate that my case doesn't rise and fall on whether this is content-based. We prevail easily under intermediate scrutiny, primarily because of the narrow tailoring problem. But in answer to your question, Judge Rosenbaum, I actually think that Reagan National is a case that has to do with the fact that, just like adverse secondary effects is kind of unique to the First Amendment, that case dealt with a sign case, and it comes with some baggage from Metro Media, the foundational case. The Supreme Court has never done a very good job with it. Reagan National had to do with the idea, can you regulate billboards differently from on-premises signs? To me, Reagan National has incorrectly decided if you're going to be a purist and if you're going to apply Reed. It still binds us. It sure does. It sure does. What I would suggest is- There are so many that are wrongly decided. We might agree on that. So two things to say about that. One is it really is a sign case. It's its own sui generis thing. But the other is, as other courts, particularly dealing with solicitation ordinances or beggars particularly, there's been a host of those cases, tell us that Reed is very much vigorous law. There's a narrow little window where Reagan, I think, has brought that back a little bit, but not to the pre-Reed days. We still, for instance, as Judge Newsom was inquiring, we don't look at benign motives. That was something pretty revolutionary in Reed that obviously survives Reagan National. I'm not sure whether it does, though. That's what I'm asking you about. So I'm pretty familiar with Reagan National. I did not see that as questioning that prong of Reed. I saw it as just merely saying that we should not be so automatic knee jerk in looking at a law and seeing if does it talk about speech and immediately concluding that it's content based. But there should be a little bit more read into that. So for instance, I think Reagan National scaled back solicitation laws a little bit because it suggested that just because you're dealing with a category of speech doesn't necessarily mean that it's content based. So we really are getting in the weeds a little bit on that. These are issues that Reagan National has not been thoroughly explored in the case law yet, so it's difficult to tell. My own read on it, however, is that Reagan National has not done much to take away from the sweep of Reed. Well, my question quickly is just about the narrow tailoring because I do find it problematic that if 18 to 20 year olds are the ones most susceptible to human trafficking in these establishments, the focus is on those who are dancing. But why isn't the focus on those who are dancing the narrow tailoring? Because otherwise, the other argument is that it's over broad. There are two quick answers to that, Judge. I know I'm well over time, but I can provide a succinct answer. One is the focus on dancers is not just an issue with narrow tailoring. It bleeds right back into content based problems with under-inclusiveness. So the idea that a dancer can come off the stage because she has to if she's under 21 and can't dance anymore under this law, but she can be a patron, right? She can be a manager, employed as a manager and supervise other dancers. She can even buy the club. And so that's a problem with under-inclusiveness. It's a somewhat different inquiry. Narrow tailoring aspect of it isn't so much the focus just on the speaker. We think that focus is a problem. It is the means chosen to regulate what is admittedly a bad problem, human trafficking. So it has to be narrowly tailored, which means we look at other regulations that would be less speech burdensome. And we've provided a host of those. I've suggested Club Madonna may be the best example of a city actually grappling with this problem, came up with enhanced verification provisions, not age-based. That decision was from 2014. We're dealing with a decade of, you know, it was constitutionally approved by this court and actual experience in the city. It seems to be working great for that city with a conventional time, place and manner restriction. We suggested about eight or ten alternatives in the record that council brought up. We can also look how the state of Florida has done this and in particularly how Jacksonville has dealt with this issue. So the Jacksonville seems to think that trafficking is also a problem in hotels and gas stations. And there's one other, convenience stores. And so the city requires those people to undergo training and you have to put up a public notice. And so if trafficking is problematic in these areas, and it definitely is in hotels, it's one of the number one trafficking spots according to the city's literature. If these are appropriate means to regulate a problem in that context, then why not here? Particularly when we should be sensitive to speech interests. You know, gas stations don't have those same interests. So we look at the city's own regulations and in FWPBS from this court, that was one of the deciding factors. The city was regulating essentially the same conduct, a form of solicitation in a different context and it had some regulations in effect, primarily permitting. And the court asked, you know, appropriately so, well, you know, if it's not, if it's suitable in that context, why don't you take that narrow tailoring and plop it down here and regulate in a similar venue? And so we have provided many, many examples from the city's law to the state's law to examples readily at mind and also to the Club Madonna case of alternative avenues that work just fine in this area. Remember please, though, that it is not our burden to prove that. It is always the city's burden to prove narrow tailoring. And we showed a couple things on the record. One is that at the legislative level, there was no evidence of narrow tailoring. The city just never brought it up. In fact, it just found ways to make this a tougher law. And then in arguments before Judge Corrigan, again, with the burden on the city, the city could not offer no explanation for why these alternative avenues would not have been perfectly suitable. Can I ask one blocking and tackling question about the preemption issue? And I don't need an extended answer. I'm inclined, you can probably tell, to buy some of what you're selling today. I'm not really buying your effort to squirm out from underneath the new state law. But if we were to, given the new state law, if we were to invalidate the Jacksonville City Ordinance on First Amendment grounds, are we effectively invalidating that new state law as well? No, Your Honor. So the new state law, you know, we've only explored a little bit in our supplemental authority. If I can lead you very quickly through what it says. So it says no one under 21 in an adult entertainment establishment. And then it says the definition of adult entertainment establishment, we look at another statute, which is 807 or something like that. And that has a very specific definition of adult entertainment. And it excludes some things that you might think the legislature might have wanted to include. But in particular, it excludes these appellants, those that are bikini dancers. Because bikini bars, such as these appellants, don't involve nudity. And nudity is the defining characteristic under the state statute. And then there's another actual weird exclusion there. So the state, when it's talking about adult bookstores, because that statute also regulates retail stores, it talks about adult media. But it doesn't talk about adult products, particularly marital aids and sexual devices. So a store could drop its DVDs and still employ 21-year-olds. It is an interesting statute, but clearly does not apply to these appellants. So I think that depending upon the breadth of this court's ruling, that it's certainly going to inform a challenge we'll be bringing later this month to the state law. But one could also see the state law is not really applying in these circumstances. Also, again, I know I'm over time, the state law is properly seen as a time, place, and manner restriction, not a ban. Here's why. It regulates, again, where nudity is involved. It does not regulate bikini bars. And so then the question is, if you're a performer or a venue, how do you deal with the state statute? If you're a performer, one way would be to go from a place, if you're dancing at a fully not regulated, and she can continue to perform. Or if you're the venue, you can decide to require dancers to put on more clothing to exempt themselves from the statute. All right. Thank you very much, counsel. Yes. Thank you. All right.